UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-CV-22356-KMM

TECNOGLASS, LLC,
*a Florida limited liability company*,

      Plaintiff,

v.

EUSBIO PAREDES, *et al.*,

      Defendants.
_____/

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court upon Plaintiff Tecnoglass, LLC's Motion for Preliminary Injunction (ECF No. 17). This matter has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable K. Michael Moore, United States District Judge (ECF No. 6). Defendants filed a response (ECF No. 22), to which Plaintiff filed a reply (ECF No. 30). The Court held an evidentiary hearing on the Motion for Preliminary Injunction on November 17, 2022 and continuing on November 18, 2022. Upon consideration of the Motion, Response, Reply, the record as a whole, and being otherwise duly advised in the premises, and with the benefit of the testimony and oral argument presented at the hearings, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion be **GRANTED**.

    **I.**    **BACKGROUND**

Plaintiff Tecnoglass, LLC initiated this action on July 27, 2022, alleging that Defendants Eusebio Paredes, Building Envelope Systems, Inc., and RC Home Showcase, Inc. (collectively,

1

"Defendants") willfully infringed upon Plaintiff's intellectual property.

Plaintiff manufactures and sells various windows, sliding glass doors, window wall systems, and related products used in the residential and commercial construction industries in North, Central, and South America. (ECF No. 1 ¶ 24).

Non-party RC Aluminum Industries, Inc. ("RC Aluminum") was a window and sliding glass door company manufacturing and selling products similar to Plaintiff's products, but primarily in the South Florida market for residential and commercial construction. (ECF No. 17 at 3). In connection with its business, RC Aluminum developed and owned proprietary intellectual property rights, including Miami-Dade Notices of Acceptance ("NOAs"), drawings, and associated copyrights pertaining to various windows, sliding glass doors, and window wall systems. (*Id.*). Miami-Dade County Product Control Section issues a NOA approval designation upon acknowledgment that a design has satisfied standards of products used for construction in Miami-Dade County, Florida. Application for a NOA requires submission of technical drawings and specifications to a third-party tester, who after testing certifies that the design will sustain winds in the High Velocity Hurricane Zone. Plaintiff's copyrighted drawings are examples of technical drawings which have been tested and resulted in the issuance of NOAs.

Defendant Paredes was a principal and owner of RC Aluminum. According to records from Florida's Division of Corporations, Paredes was an officer from 1996 to January 2014.[1] From approximately 2003 to October 2013, Paredes was a minority owner of Defendant RC Home Showcase, Inc. ("RC Home"), which was an affiliate of RC Aluminum.

RC Home is a small enterprise that primarily designs and manufactures sliding glass doors, windows, glass railings, and storefronts. The products sold by RC Home are made from aluminum

---

[1] The Department of State provides an online index of corporate registration ("Sunbiz"). *See* https://dos.myflorida.com/sunbiz/ (last visited December 27, 2022).

and glass and they are primarily sold to consumers for use in residential settings. In 2013, RC Home was sold to Manuhen Enterprises, LLC ("Manuhen").

In November of 2013, Plaintiff purchased technical drawings and NOAs from RC Aluminum for its glass and glazing products. The purchase and sale was memorialized in a written agreement ("Acquisition Agreement"). In October of 2013, Paredes departed from RC Home; however, he reacquired RC Home sometime between the Fall of 2020 and Spring of 2021. In 2013, Paredes also formed Building Envelope Systems, Inc. ("BES"), which operated as a subcontractor on construction projects being developed in South Florida.[2]

### a. Procedural Background

In October 2014, Tecnoglass filed suit against RC Home for alleged licensing and royalty issues involving the RC Aluminum intellectual property that Tecnoglass acquired in 2013. *See generally Tecnoglass LLC v. RC Home Showcase, Inc., et al.*, Case No. 14-25605-CA-40 (Fla. Cir. Ct.). At that time, Paredes was not involved in any capacity with RC Home. In December 2014, the parties entered into a negotiated settlement agreement (the "2014 Settlement Agreement"), which granted RC Home "a limited license to use a specifically-defined subset of Tecnoglass' intellectual property for an explicit six-month time period." (ECF No. 17 at 2).

In 2016, Tecnoglass filed suit in federal court (1) alleging improper reproduction, distribution, and/or publishing of its technical drawings, which were incorporated into Tecnoglass' NOAs, and are the subject of Tecnoglass' Copyright Registrations, and (2) to prevent RC Home from using Tecnoglass' intellectual property and to enforce the 2014 Settlement Agreement.

Plaintiff owns the following copyright registrations relating to technical drawings (the

---

[2] According to Defendants, Building Envelope Systems, Inc. was dissolved; however, BES Associates, Corp., an active Florida corporation owned by Defendant Paredes, transacts remaining business on behalf of BES. For purposes of this Report and Recommendation, any reference to BES includes BES Associates, Corp.

"Technical Drawings") for sliding glass door and window wall system products:

| NOA | Reg. No. | Title of Work |
|---|---|---|
| 17-1115.04 | VA2-018-192 | Series 2400ST Alum. Sld. Glass Door L.M.I. – Design W01-75 |
| 21-0317.10 | VA2-018-180 | Series HP3060 Alum. Window Wall System S.M.I. – Design W04-25 |
| 21-0317.08 | VA2-018-167 | Series HP3070 Alum. Window Wall System L.M.I. – Design W03-115 |
| 21-0317.09 | VA2-018-182 | Series HP3070 Alum. Window Wall System S.M.I. – Design W04-26 |
| 21-0225.05 | VA2-018-191 | Series 2400ST Alum. Sld. Glass Door S.M.I. - Design W01-54 |

(ECF No. 1 at 7).

Tecnoglass and RC Home subsequently entered into a settlement agreement restricting RC Home's use of Tecnoglass' intellectual property and acknowledging Tecnoglass' "ownership, and rights appurtenant to, its relevant intellectual property" (the "2018 Settlement Agreement"). (*Id.*) (citing *Tecnoglass, LLC v. RC Home Showcase, Inc.*, No. 16-24328-CIV (S.D. Fla. Oct. 6, 2017)). Paredes was not involved with RC Home at the time.

In March 2022, Plaintiff discovered that Defendants used Plaintiff's Tecnoglass Drawings, NOAs, and/or intellectual property in a project located at 601 Washington Avenue, Miami Beach, Florida (the "601 Washington Project"). (ECF No. 17 at 9). On March 1, 2022, Tecnoglass sent a Cease and Desist Notice to Defendants Paredes and BES demanding that they cease use of Plaintiff's NOAs. In addition to BES' Series FX 3000 window wall system, which Plaintiff alleges infringes on its Series HP-3070 W03-115 L.M.I. and Series HP-3070 W04-26 S.M.I. products, Plaintiff alleges that Defendants sought and obtained product approvals for other products that infringe on Plaintiff's intellectual property. (*Id.* at 10).

On July 27, 2022, Plaintiff commenced the instant action by filing a seven-count Verified Complaint ("Complaint") alleging the following: (1) copyright infringement, in violation of 17 U.S.C. §§ 106 and 501; (2) a request for the entry of injunctive relief against BES; (3) tortious

4

interference with business relationship; (4) breach of contract against RC Home, with respect to the 2018 Settlement Agreement; (5) breach of contract against Paredes, with respect to the 2018 Settlement Agreement; (6) injunction and temporary restraining order against Paredes; and (7) tortious interference with business relationship, against Paredes.

In Defendants' Answer, Defendants asserted fourteen Affirmative Defenses. *See* (ECF No. 15). RC Home also has asserted a counterclaim against Plaintiff for a declaratory judgment seeking a declaration that RC Home has not infringed upon any protected intellectual property rights of the Plaintiff and, thus, that they can continue to sell, supply, and install their glass and glazing products at present and future projects.

Plaintiff filed the instant Motion for Preliminary Injunction against Defendants requesting that the Court issue a preliminary injunction that enjoins Defendants from infringing upon Plaintiff's Copyright Registrations (the "Copyright Registrations") and, among other things, improperly utilizing Plaintiff's NOAs. Plaintiff further requests that Defendants destroy any documents found to have infringed upon the Copyright Registrations or Plaintiff's NOAs. Plaintiff defines the scope of material at issue in this Motion to include Tecnoglass NOAs, Tecnoglass Drawings, Technical Drawings, Copyright Registrations, and all other intellectual property Tecnoglass purchased from RC Aluminum, unless specifically stated otherwise in the Motion.

On November 17, 2022, and continuing on November 18, 2022, the Court held an evidentiary hearing on Plaintiff's Motion. Plaintiff presented the testimony of three witnesses: Andres Chamorro, Samir Sabagh, and Javad Ahmad. Defendants presented the testimony of Eusedes Paredes.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 permits courts to enter preliminary injunctions. Fed. R. Civ. P. 65. To prevail on a motion for a preliminary injunction, a plaintiff must establish that:

(1) there is a substantial likelihood of success on the merits of the plaintiff's claims; (2) it will suffer irreparable harm in the absence of injunctive relief; (3) the threatened injury to the plaintiff outweighs any potential harm to the defendant if injunctive relief is granted; and (4) granting the injunction would not be adverse to the public interest. *It's A 10 v. Beauty Elite Group, Inc.*, 932 F. Supp. 2d 1325, 1330 (S.D. Fla. 2013). The issuance of a preliminary injunction is an extraordinary remedy that should not be granted absent a clear showing that the movant has met its burden of proof. *Café 207 v. St. Johns Cnty.*, 989 F.2d 1136, 1137 (11th Cir. 1993).

### III. DISCUSSION

#### a. The Tecnoglass Intellectual Property

At the outset, Plaintiff avers that the material at issue includes the following defined terms: Tecnoglass NOAs, Tecnoglass Drawings, Technical Drawings, Copyright Registrations, and all other intellectual property Tecnoglass purchased from RC Aluminum, unless specifically stated otherwise. (ECF No. 17 at 6–7). Defendants argue that Plaintiff seeks a preliminary injunction to prevent the reproduction of material, including the NOAs, which are not protected by any registered copyright. Indeed, Plaintiff concedes that the Copyright Registrations "concern only the Technical Drawings that are incorporated into the NOAs, and not the NOAs themselves." (*Id.* at 17). Accordingly, the Court considers the protected intellectual property at issue in the subject Motion to only encompass Plaintiff's Technical Drawings and Copyright Registrations.

#### b. Likelihood of Success on the Merits

Plaintiff claims, as to each Defendant, that it has a substantial likelihood of success on the merits of its claim for copyright infringement. Defendant contends that Plaintiff's Copyright Registrations, although valid, do not protect Plaintiff's Technical Drawings, and that Defendant has not copied any copyrighted material, thus, Plaintiff is unlikely to succeed.

To succeed on a claim of copyright infringement, a plaintiff must establish "(1) ownership

6

of a valid copyright, and (2) copying of constituent elements of the work that are original." *See Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1301 (11th Cir. 2020) (quoting *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996)).  Copyright is built on the "fundamental axiom" that "copyright protection does not extend to ideas but only to particular expressions of ideas."  *See Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1224 (11th Cir. 2008) (citing 17 U.S.C. § 102(b)).

### i. Ownership

Plaintiff argues that its Copyright Registrations, specifically as they relate to Plaintiff's Technical Drawings, constitute prima facie evidence of their validity and Plaintiff's ownership of the copyrights.  Defendant does not dispute that Plaintiff owns the Copyright Registrations, and Defendant even acknowledges that "the owner of copyrighted technical drawings is granted the right to prevent unauthorized copying of those plans or drawings."  (ECF No. 22 at 13). Notwithstanding, Defendant argues that Plaintiff has not sufficiently described what protected material is in the technical drawings.  Defendant avers that the Copyright Registrations do offer protections, but that the protectable interest does not extend to "the useful article depicted by those plans," which Defendant avers is the concept of building a window or the dimensions of the window.  (*Id.*) (citing *Demetriades v. Kaufmann*, 680 F. Supp. 658, 664 (S.D.N.Y. 1988)). Defendant reasons that the concept of building a window or the dimensions of a window are verifiable facts for which no one may claim originality, thus, there is no original expression behind Plaintiff's Technical Drawings.

Notwithstanding Defendants' contentions, Plaintiff is substantially likely to succeed in establishing that Defendants infringed upon the Technical Drawings and Copyright Registrations by using the public NOAs and the incorporated Technical Drawings as the blueprint for Defendants' own windows.

Here, the evidence and testimony support a finding that Plaintiff owns the Technical Drawings, which are incorporated into the Copyright Registration. At the hearing, Plaintiff's witnesses testified that, by using Plaintiff's unique Technical Drawings, Defendants are manufacturing replicas of Plaintiff's window systems, thus, infringing upon its intellectual property. Javad Ahmad, a licensed engineer, testified that without the assistance of computer-aided design software, he could not confirm Plaintiff's and Defendants' technical drawings were literally identical; however, he was certain that the drawings are substantially identical and that the extrusions are interchangeable.[3] Defendants' witness, Eusebio Paredes, testified that the extrusions were not identical and that there were certain differences, including the dimensions of the extrusions.

In *Tecnoglass, LLC v. RC Home Showcase, Inc.*, 301 F. Supp. 3d 1267, 1272 (S.D. Fla. 2017) ("*Tecnoglass I*"), Tecnoglass, LLC also filed suit on grounds similar to the instant case on the basis that the same Defendant, RC Home, infringed upon the copyright registrations for six technical drawings of window wall systems and sliding glass doors. In that case, RC Home also argued that the works at issue were useful articles not subject to copyright protections, and that individual features, such as windows doors, and other staple building components were not protected as well. Ruling on the defendant's motion to dismiss, the district court found that the statutory definition of "useful article" excludes technical drawings because it is defined as "an article having an intrinsic function that is *not merely to portray the appearance of the article or to convey information.*" *Tecnoglass*, LLC, 301 F. Supp. 3d at 1273 (collecting cases).

Thus, it is evident that Plaintiff's Technical Drawings are subject to copyright protection,

---

[3] "Metal extrusion is a metal forming process in which a work piece, of a certain length and cross section, is forced to flow through a die of a smaller cross-sectional area, thus forming the work to the new cross section." *See* https://thelibraryofmanufacturing.com/extrusion.html/ (last visited December 27, 2022).

and that Plaintiff's Copyright Registrations, which incorporate the Technical Drawings, demonstrate Plaintiff's ownership of the copyrights.

## ii. Copying the Intellectual Property

Plaintiff argues that Defendants' drawings and designs in their NOAs are indistinguishable from Plaintiff's Technical Drawings. Defendant contends that plain and significant differences exist between the Parties' drawings and designs. Defendant argues that its products and designs are not substantially similar to Plaintiff's copyrighted materials, including the Technical Drawings.

To demonstrate copying, a plaintiff must show "that the person who composed the defendant's work had access to the copyrighted material and that there is substantial similarity between the two works." *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1249 (11th Cir. 1999). Plaintiff argues that, to an ordinary observer, its Technical Drawings are indistinguishable from Defendants' NOAs and technical drawings, thus, they are substantially similar. Further, Plaintiff argues that Defendants had access to Plaintiff's Technical Drawings through the Miami-Dade County NOA records, and that an inference of access arises when a copy is nearly identical to the copyrighted work. (ECF No. 17 at 15).

Citing to *National Medical Care, Inc. v. Espiritu*, 284 F. Supp. 424, 433 (S.D. W.Va. 2003), Defendants contend that determining substantial similarity is a two-pronged test, including an extrinsic and intrinsic test. First, the district court in that case applied the extrinsic test, which requires a court to consider, from an objective point of view, whether the works are substantially similar in protected expression. *Oravec v. Sunny Isles Luxury Ventures L.C.*, 469 F. Supp. 2d 1148, 1168 (S.D. Fla. 2006), *aff'd*, 527 F.3d 1218 (11th Cir. 2008). If there are no similarities, or the similarities involve only unprotected elements of the work, then summary judgment is appropriate. *Id.* As part of the extrinsic analysis, expert testimony and analytic dissection are appropriate. *Id.* Second, the district court applied the intrinsic test, which involves a more holistic

9

view of the competing designs, comparing their "overall look and feel." *Id.* at 1169 (citing *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1296 (D.C. Cir. 2002); *Cornerstone Home Builders, Inc. v. McAllister,* 303 F. Supp. 2d 1317, 1320 (M.D. Fla. 2004). The intrinsic test requires that the court consider whether the audience for which the designs are intended view the designs as substantially similar.

Defendants contend that the Technical Drawings exhibit a relatively low degree of expressive content, and that these drawings are regarded as "thin" works due to their lack of expressive content. *Nat'l Med. Care, Inc. v. Espiritu*, 284 F. Supp. 2d 424, 436 (S.D. W. Va. 2003) (citing *Feist Publ'ns v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991)). In *National Medical Care*, the district court held that an as-built structure or feature for medical cabinets is not an infringing copy of a technical drawing. 284 F. Supp. at 435. The district court, applying the two-part test, found that the medical cabinets depicted in the technical drawings consisted of thin works, including drawers, cupboards, counters, shelves, and features which are utilitarian components. The district court further found that the utilitarian components were similar, but that similarities of individual utilitarian components are not protected by copyright law. *Id.* at 436.

Unlike *National Medical Care*, Plaintiff's Technical Drawings do not depict simple utilitarian objects that consist of a "high degree of standardization between [window] designs." *Id.* Plaintiff's Technical Drawings contain unique features that contain expressive content. Such features include the specific extrusions, window systems, door systems, and measurements for these systems. Plaintiff does not simply seek to copyright a generic window design, thus, the Court does not find Plaintiff's Technical Drawings "thin;" however, the Court finds that the Parties' drawings extrinsically and intrinsically similar.

With the benefit of the Parties' briefings and the evidence presented at hearing, the Court has viewed and visually compared the competing designs side by side to identify and evaluate any

similar or shared features.  The overall look of the diagrams presented within the drawings and the designs indicate that there are nearly identical features, and constituent elements that are shared. To the extent the technical drawings are substantially similar and/or identical, the Court finds that Defendants' drawings indicate that Defendants copied Plaintiff's Technical Drawings.

Even if the Court were to not apply the two-prong test proffered by Defendants as to substantial similarity between the technical drawings, the Court still finds that Defendants' technical drawings copied Plaintiff's Technical Drawings.  In such cases "[w]here a plaintiff cannot demonstrate access he may, nonetheless, establish copying by demonstrating that his original work and the putative infringing work are strikingly similar." *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 n.6 (11th Cir. 2002) (*per curiam*).  Works are strikingly similar where the proof of similarity in appearance is "so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007) (quoting *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984)).

A visual examination of the Parties' technical drawings indicates that some of the diagrams depicted are indeed so strikingly similar that it cannot be said that Defendants' technical drawings are original.  The evidence supports Plaintiff's contention that some of the drawings and designs are virtually indistinguishable from Plaintiff's Technical Drawings.  Considering the prima facie evidence of Plaintiff's ownership of the Copyright Registrations and the apparent copying of constituent elements of Plaintiff's Technical Drawings, I find that Plaintiff has met its burden to show a likelihood of success on the merits.

### c. Irreparable Harm

As for the second factor, Plaintiff contends that if injunctive relief is not granted, Plaintiff will continue to suffer irreparable harm to its reputation, goodwill, and brand.  Further, Plaintiff

argues that injunctive relief will prevent further marketplace confusion and prevent the loss of customers, in addition to preventing any further diminution in the value of Plaintiff's Copyright Registrations.

Plaintiff argues that Defendants "knowingly and intentionally" used similar product names and numbers to deceive customers, and that the intangible nature of intellectual property rights poses an enhanced risk of irreparable harm. In response, Defendants argue that Plaintiff has no goodwill among consumers in South Florida because it does not sell directly to consumers, and that Plaintiff is not an actual glass and glazing subcontractor. Defendants argue that, to the contrary, the harm that would result to them from injunctive relief is evident because they would be unable to sell their manufactured products.

Notwithstanding Defendants' contention that Plaintiff is bound to suffer minimal harm, the evidence that Defendants have used Plaintiff's NOAs and Technical Drawings on at least one prior occasion for the 601 Washington Project supports Plaintiff's contention that they stand to suffer irreparable harm. *C.B. Fleet Co. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1083 (S.D. Fla. 2007) ("[L]oss of market share is more than sufficient to establish irreparable harm.").

### d. Balance of Hardships

The third factor to consider in determining whether to grant Plaintiff's Motion is whether the threatened injury to Plaintiff outweighs the potential harm to Defendants. Plaintiff argues that this factor weighs in its favor because Defendants can continue to conduct business, even if the injunctive relief is granted. In response, Defendants argue that their businesses, specifically Defendant BES, would suffer, and a preliminary injunction would effectively preclude Defendants from marketing, selling, and installing their products.

At the hearing Defendants' witness testified that Defendants are not using Plaintiff's NOAs and Technical Drawings as part of Defendants' own NOAs or drawings and designs. In fact, the

testimony demonstrated that Defendants' businesses have continually operated without reliance on Plaintiff's NOAs and Technical Drawings. On the other hand, Plaintiff has demonstrated that it invested substantial time and money to create the Technical Drawings, including the hiring of engineering firms and the research associated with developing the Technical Drawings and receiving the NOAs. The evidence and testimony proffered demonstrate that the threatened injury to Plaintiff outweighs the potential harm to Defendants who may continue business without significant interruption. Accordingly, this factor weighs in Plaintiff's favor.

### e. Public Interest

The final factor to consider when evaluating whether to enter injunctive relief is the public interest. Plaintiff argues that it is in the public's interest to uphold copyright protection and prevent the misappropriation of protected works, and that there is a legitimate contract between the Parties. Further, Plaintiff contends that the public interest will be served if an injunction is issued because Defendants will be prevented from misleading the public through Defendants' use of Plaintiff's Technical Drawings. *C.B. Fleet Co.*, 510 F. Supp. 2d at 1084 ("A preliminary injunction will prevent Defendant's from continuing to misappropriate the skills, creative energies, and resources that [the plaintiff] has invested in its copyrights."). It is Defendants' contention that granting injunctive relief would have a detrimental effect on the public in the form of higher costs paid by consumers as a result of limited competition. The evidence and testimony proffered support Plaintiff's contention that it is in the public's interest to issue injunctive relief.

***

Based on the foregoing, I find that Plaintiff satisfies the requirements necessary to support the entry of a preliminary injunction against all Defendants.

### f. Bond

Having found that a preliminary injunction is warranted, the Court now establishes the

proper level of security that Plaintiff must provide for the injunction. Federal Rule of Civil Procedure 65(c) provides that "the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65. The Court has the discretion to issue a preliminary injunction without requiring Plaintiff to give a security bond. *TracFone Wireless, Inc. v. Washington*, 978 F. Supp. 2d 1225, 1234 (M.D. Fla. 2013) (citing *BellSouth Telecomms., Inc. v. MCI Metro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005)).

Defendants dispute Plaintiff's contention that the Court should set a minimal bond because Defendants argue that Plaintiff is trying to prevent Defendants from selling their products, and that a higher bond is necessary to cover the costs and damages sustained by parties found to have been wrongfully enjoined. Plaintiff argues "strong and indisputable evidence" of copyright infringement weighs in favor of a minimal bond. Accordingly, I recommend that Plaintiff be required to post a bond in the amount of TEN THOUSAND DOLLARS AND ZERO CENTS ($10,000.00).

## IV.  RECOMMENDATIONS

For the foregoing reasons, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion for Preliminary Injunction (ECF No. 17) be **GRANTED**.

It is **FURTHER RECOMMENDED** that:

1.  As to Plaintiff Tecnoglass, LLC's claim against Defendant RC Home for breach of contract, RC Home, and its parent companies, affiliates, agents, servants, employees, officers, successors, licensees, assigns, and all persons and entities acting in concert or participating with each or any of them, including, without limitation, BES Associates, Corp. ("BES, Corp."),

Defendant Building Envelope Systems, Inc. ("BES, Inc."), and Defendant Eusebio Paredes, be preliminarily enjoined from directly or indirectly engaging in the following conduct:

    a.    Challenging, or assisting any third party in challenging, Tecnoglass' Copyright Registrations, as that term is defined in Article II(H) of the 2018 Settlement Agreement;

    b.    Infringing, or assisting any third party in infringing, on Tecnoglass' Copyright Registrations;

    c.    Using, in any way, Tecnoglass Drawings, as defined in Articles II(F), (J), (I), respectively, of the 2018 Settlement Agreement, excluding only Common Extrusions, as defined by Article II(K) of the 2018 Settlement Agreement, which RC Home, BES, and Paredes may continue to use; and,

    d.    Using, in any way, all technical drawings for the following products:[4]

        i.    Tecnoglass Series 2400 ST Aluminum Sliding Glass Door (SMI) ("Tecnoglass 2400 SMI"), which technical drawings are included in NOA No. 17-1115.03, and are protected by Copyright Registration No. VA2-018-191;

        ii.    Tecnoglass Series 2400 ST Aluminum Sliding Glass Door (LMI) ("Tecnoglass 2400 LMI"), which technical drawings are included in NOA No. 17-1115.04, and are protected by Copyright Registration No. VA2-018-192;

        iii.    Tecnoglass Series HP-3070 Aluminum Window Wall System (LMI) ("Tecnoglass 3070 LMI"), which technical drawings are

---

[4] This prohibition specifically includes the use of any Miami Dade County Notice of Acceptances ("NOA") or Florida Product Approvals ("FPA") if such NOAs or FPAs contain Plaintiff's Technical Drawings.

      included in NOA No. 21-0317.08, and are protected by Copyright Registration No. VA2-018-167; and

  iv. Tecnoglass Series HP-3070 Aluminum Window Wall System (SMI) ("Tecnoglass 3070 SMI"), which technical drawings are included in NOA No. 21-0317.09, and are protected by Copyright Registration No. VA2-018-182.

  v. BES, Inc., Series 2519 Aluminum Sliding Glass Door (LMI and SMI) ("BES 2519"), which technical drawings are included in FPA No. 33510-R1, and which this Court finds are essentially identical to technical drawings for Tecnoglass 2400 LMI and Tecnoglass 2400 SMI; and

  vi. BES, Inc., Series FX-3000 Aluminum Window Wall System (LMI and SMI) ("BES FX 3000"), which technical drawings are included in FPA No. 24159-R1, and which this Court finds are essentially identical to technical drawings for Tecnoglass 3070 LMI and Tecnoglass 3070 SMI.

  2. As to Plaintiff's claim for copyright infringement, and for preliminary injunctive relief, BES, Inc., and its parent companies, affiliates, agents, servants, employees, officers, successors, licensees, assigns, and all persons and entities acting in concert or participating with each or any of them, including, but not limited to, BES, Corp., RC Home, and Paredes, be preliminarily enjoined from directly or indirectly using, in any way, Miami Dade County NOAs or FPAs, if such NOAs or FPAs contain Plaintiff's Technical Drawings, for the following products:

    a.    Tecnoglass 2400 SMI, which technical drawings are included in NOA No. 17-1115.03, and are protected by Copyright Registration No. VA2-018-191;

    b.    Tecnoglass 2400 LMI, which technical drawings are included in NOA No. 17-1115.04, and are protected by Copyright Registration No. VA2-018-192;

    c.    Tecnoglass 3070 LMI, which technical drawings are included in NOA 21-0317.08, and are protected by Copyright Registration No. VA2-018-167;

    d.    Tecnoglass 3070 SMI, which technical drawings are included in NOA 21-0317.09, and are protected by Copyright Registration No. VA2-018-182;

    e.    BES 2519, which technical drawings are included in FPA No. 33510-R1, and which this Court finds are essentially identical to technical drawings for Tecnoglass 2400 LMI and Tecnoglass 2400 SMI; and

    f.    BES FX 3000, which technical drawings are included in FPA No. 24159-R1, and which this Court finds are essentially identical to technical drawings for Tecnoglass 3070 LMI and Tecnoglass 3070 SMI.

3.    This Preliminary Injunction should take effect immediately and remain in effect pending trial in this action or further order of the District Court.

4.    Plaintiff be ordered to file proof of bond or make other adequate provision for a bond in the amount of TEN THOUSAND DOLLARS AND ZERO CENTS ($10,000.00) within seven days of this Order. The Bond shall serve as security for all claims with respect to this Preliminary Injunction, and any additional injunctive relief ordered by the Court in this action.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable K. Michael Moore, United States District Court Judge for the Southern District

of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida this 30th day of December, 2022.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

cc:   Honorable K. Michael Moore
      All Counsel of Record